No. 25-4510

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

KAELI GARNER, et al.,

*Plaintiffs-Respondents*,

v.

AMAZON.COM, INC., a Delaware Corporation, and AMAZON.COM
SERVICES, LLC, a Delaware Limited Liability Company,

*Defendants-Petitioners.*

On Appeal from the United States District Court
for the Western District of Washington
No. 2:21-cv-00750-RSL
Honorable Robert S. Lasnik

PLAINTIFFS-RESPONDENTS' OPPOSITION TO PETITION OF
AMAZON.COM, INC. AND AMAZON.COM SERVICES, LLC FOR
PERMISSION TO APPEAL PURSUANT TO FED. R. CIV. P. 23(F)

**REDACTED**

Stuart A. Davidson
Mark J. Dearman
ROBBINS GELLER RUDMAN
 & DOWD LLP
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone: 561/750-3000

Michael P. Canty
Carol C. Villegas
LABATON KELLER SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone: 212/907-0700

Counsel for Plaintiffs-Respondents Kaeli Garner, et al.

*Garner, et al. v. Amazon.com, Inc., et al.*
Ninth Circuit No. 25-4510

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Civil Procedure 26.1, Plaintiffs-Respondents state

that each is not a nongovernmental corporate party.

4912-1458-4925.v1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................1

II.   STATEMENT OF THE CASE ..............................................3

    A.   Summary of the Facts.............................................................3

    B.   Class Certification Proceedings ............................................4

III.  STANDARD OF REVIEW.....................................................7

IV.  ARGUMENT...........................................................................8

    A.   Amazon's Concessions Make This Case Unsuitable for
          Interlocutory Appeal..............................................................8

    B.   Amazon Fails to Raise an Unsettled Legal Issue or Manifest
          Error Regarding Standing.......................................................9

    C.   Amazon Fails to Demonstrate Manifest Error Regarding
          Damages ...............................................................................18

V.    CONCLUSION......................................................................25

4912-1458-4925.v1

# TABLE OF AUTHORITIES

**CASES**                                                        **PAGE**

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) ................................................................17

*Brown v. Google LLC*,
  2021 WL 6064009 (N.D. Cal. Dec. 22, 2021)............................................21, 23

*Castillo v. Costco Wholesale Corp.*,
  2024 WL 4785136 (W.D. Wash. 2024)............................................................20

*Chamberlan v. Ford Motor Co.*,
  402 F.3d 952 (9th Cir. 2005) ................................................................*passim*

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)..........................................................18, 19, 20, 22

*Davis v. Lab'y Corp. of Am. Holdings*,
  2024 WL 489288 (9th Cir. Feb. 8, 2024) ........................................................10

*Del Vecchio v. Amazon.com, Inc.*,
  2012 WL 1997697 (W.D. Wash. June 1, 2012) ..........................................21, 22

*Frias v. Asset Foreclosure Servs., Inc.*,
  334 P.3d 529 (Wash. 2014) ................................................................20

*In re Sumitomo Copper Litig.*,
  262 F.3d 134 (2d Cir. 2001) ................................................................8

*Lab'y Corp. of Am. Holdings v. Davis*,
  605 U.S. 327 (2025)..........................................................9, 10

*Lytle v. Nutramax Labs., Inc.*,
  114 F.4th 1011 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1308 (2025) ..............10

*Mason v. Mortg. Am., Inc.*,
  792 P.2d 142 (Wash. 1990) ................................................................18

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ........................................................10, 11, 12, 13

4912-1458-4925.v1

**Page**

*Noohi v. Johnson & Johnson Consumer Inc.*,
2025 WL 2089582 (9th Cir. July 25, 2025) ................................................23, 24

*Nordstrom, Inc. v. Tampourlos*,
733 P.2d 208 (Wash. 1987) ...............................................................19

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) ...........................................................10, 11, 12, 15

*Panag v. Farmers Ins. Co. of Wash.*,
204 P.3d 885 (Wash. 2009) ...............................................................18, 19

*Ruiz Torres v. Mercer Canyons Inc.*,
835 F.3d 1125 (9th Cir. 2016) ...........................................................*passim*

*Univ. Life Church Monastery Storehouse v. Am. Marriage Ministries*,
2022 WL 2317439 (W.D. Wash. June 28, 2022) ................................................18

*Van v. LLR, Inc.*,
61 F.4th 1053 (9th Cir. 2023) ...........................................................17

*Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*,
858 P.2d 1054 (Wash. 1993) ...............................................................19

## STATUTES, RULES, AND REGULATIONS

Federal Rules of Civil Procedure
    Rule 23 ...............................................................................5, 9, 13
    Rule 23(a).............................................................................1, 4, 5, 8
    Rule 23(b)(2)...........................................................................1, 4, 5, 8, 9
    Rule 23(b)(3)...........................................................................1, 2, 4, 6, 7
    Rule 23(f)..............................................................................*passim*

4912-1458-4925.v1

Plaintiffs-Respondents Jodi Brust, Diane McNealy, Jeffrey Hoyt, and Selena Johnson ("Plaintiffs") oppose Defendants-Petitioners Amazon.com, Inc. and Amazon.com Services, LLC's ("Amazon" or "Defendants") petition ("Petition" or "Pet."), under Federal Rule of Civil Procedure 23(f), for leave to appeal the Order granting class certification ("Order").

## I.    INTRODUCTION

Amazon fails to meet the demanding criteria for interlocutory review of the Order. *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 595 (9th Cir. 2005). Indeed, this Court recognizes that a disruptive and time-consuming Rule 23(f) appeal is warranted only in rare cases involving, *inter alia*, an unsettled question of Ninth Circuit law or a manifest error of law so obvious that the class-certification order is certain to be reversed. Neither circumstance is present here.

As a threshold matter, a Rule 23(f) appeal will not stop this case from proceeding to summary judgment and trial. While the district court granted class certification under Rule 23(b)(2) ***and*** (b)(3), Amazon ***only*** challenges a smattering of Rule 23(b)(3) issues. Because this case is already in its late stages, and will proceed to the merits regardless, it presents an unsuitable candidate for interlocutory review.

Nonetheless, Amazon's standing concerns regarding the potential inclusion of uninjured Alexa users in the certified Rule 23(b)(3) class does not warrant this

- 1 -

Court's immediate intervention. While Amazon laments the Supreme Court's recent refusal to resolve the alleged scourge of uninjured class members, there is no unsettled question of law in ***this*** Circuit—certification is appropriate even where the class contains more than a *de minimis* number of members without standing. Amazon's attempt to manufacture an intra-circuit split where none exists falls flat.

So too does Amazon's claim that the district court committed manifest error by certifying a Rule 23(b)(3) class possibly containing uninjured class members. There is no error of law here; rather, the court simply found, as a factual matter, that Amazon failed to provide ***any*** evidence that uninjured class members exist, and that Amazon's speculation regarding hypothetical categories of uninjured Alexa registrants cannot defeat class certification.

Amazon's attacks on the district court's damages analysis fare no better. Plaintiffs bring one claim under Washington's Consumer Protection Act ("WCPA"), and Amazon wholly ignores Washington law providing that Plaintiffs need not prove damages under the WCPA. Yet, Plaintiffs quantified those damages anyway.

Far from any manifest error, the district court rightly found that common evidence showed classwide injury, voice recordings that Amazon misappropriated had value, and Plaintiffs presented a viable method for establishing such value, regardless of whether their expert actually applied the method, which is unnecessary

4912-1458-4925.v1

at this stage. Although Amazon disagrees with the court's analysis, such disagreement does not justify Rule 23(f) review.

The Petition should be denied.

## II. STATEMENT OF THE CASE

### A. Summary of the Facts

Amazon developed Alexa—a voice-operated tool used to respond to requests and execute commands—to surreptitiously intercept private conversations. Through Alexa, Amazon recorded those private conversations, created verbatim transcripts (with the assistance of unknown third-party contractors) of every knowing and unknowing interaction, and used the recordings and transcripts for its commercial benefit.

This surreptitious recording was not accidental—Amazon intentionally designed Alexa to do so. Amazon knowingly intercepted private conversations— referring to such interception as "false wakes"—to train its algorithms and create new products without paying for this valuable data. The more data Amazon collects, the more it benefits. In fact, Amazon needed the false-wake data to make Alexa work better.

Alexa software operates through various algorithms and machine-learning platforms using volumes of data for continuous training, a central component of which involves improving Alexa's ability to distinguish between commands directed

to Alexa and private conversations that are not. That said, machine learning-based algorithms can be trained in a variety of ways that do not involve surreptitious recording, but these methods are costly, including paying for interactions and purchasing data sets.

Amazon opted for the most economical strategy: intercepting as many private conversations as possible—even when Amazon knew they were unintended for Alexa, and fed the conversations into its models. Unbeknownst to Alexa registrants, Amazon also allowed "human annotators" to listen to and transcribe these conversations. Even when purportedly allowing for user deletion of recordings, Amazon kept the transcripts. Amazon never disclosed these activities to those who registered and used an Alexa device.

### B.    Class Certification Proceedings

Plaintiffs pursue remedies under the WCPA for Amazon's undisclosed recording and use of private conversations. Plaintiffs moved for certification of a class under the WCPA, comprised of all persons in the United States who registered one or more Alexa devices.[1] Plaintiffs' evidence demonstrated that they satisfied the prerequisites of Rule 23(a), (b)(2), and (b)(3). The district court agreed.

---

[1]    The district court denied certification of a separate class of unregistered persons whose private conversations Amazon also recorded and used. Although Plaintiffs Kaeli Garner and Ronald Johnson, among others, sought to represent this class, the court found them to be members of the certified class.

- 4 -

Before addressing those prerequisites, however, the district court considered certain threshold issues. First, the court "decline[d]" Amazon's "invitation" to resolve its later-filed summary-judgment motion before class certification. Order 4. Second, the court rejected Amazon's claims that the proposed class was overbroad because it purportedly contained uninjured class members without Article III standing. *Id.* at 4-7. Applying settled Ninth Circuit law, the court recognized that certification is appropriate even where the class "includes more than a *de minimis* number of uninjured class members[.]" *Id.* at 6. The court then held that, regardless, Amazon failed to provide any evidence supporting its standing challenge, concluding that "there is no reason to suspect, much less presume, that a significant or more than *de mininis* portion of the proposed class escaped recording" by Alexa. *Id.* at 6-7.

Turning to Rule 23, the district court determined that Plaintiffs easily satisfied the four requirements of Rule 23(a). *See id.* at 7-11. The court further held that "a Rule 23(b)(2) class of registrants may be certified for the purpose of seeking injunctive relief" under the WCPA. *Id.* at 13. In so doing, the court found that injunctive relief is appropriate because Amazon "acted uniformly in relation to the registrant class by recording them in the absence of a wake word and, without disclosure, transcribing, storing, and using those recordings indefinitely for their own benefit." *Id.* at 12.

- 5 -

Applying Rule 23(b)(3), the court agreed that Plaintiffs demonstrated predominance regarding their WCPA claim.[2]  Regarding damages, the court rejected Amazon's arguments that "there is no viable method for ascertaining damages across the entire class." *Id.* at 15.  As the court correctly recognized, Plaintiffs proposed a damages model, through their expert Dr. Jonathan Hochman, that focused on "common methods for establishing the value of the voice data [Amazon] took and used for their own purposes without compensation[.]" *Id.* at 28.  Dr. Hochman testified that there are at least two viable methods with which to measure damages: "(a) the fair market value of individual utterances or monthly subscriptions for the data and (b) the costs [D]efendants currently incur to acquire non-Alexa voice recordings." *Id.*  As the court remarked, "Defendants have not suggested any reason to doubt that a per utterance value can be obtained." *Id.*

Consequently, noting that "plaintiffs need not prove the actual value of the data taken" at the certification stage, the court held that Plaintiffs sufficiently "present[ed] a model or method for establishing that value given the facts of the case…regardless whether Jonathan Hochman's expert opinions stop short of

---

[2]    The Petition does not contest many of the district court's predominance findings regarding the WCPA's elements.  Order 24-28.  Specifically, while it disputed below whether Plaintiffs provided sufficient classwide evidence of injury and causation, *id.*, Amazon raises no Rule 23(f) challenge to the court's findings that common questions of injury and causation predominated.

- 6 -

applying the model or method." *Id.* at 28 n.6.  Any individualized review of account data to support Dr. Hochman's damages analysis, the court explained, does not defeat certification.  *Id.* at 28-29.

The court also "[r]evisit[ed]" Amazon's standing arguments in the predominance context, resolving that "the concern that a class of all registrants may contain individuals who were never recorded does not preclude class certification." *Id.* at 29.  According to the court, "[w]hile the standing issue will necessitate the same individualized review of Alexa account data as the damage issue, it does not predominate over the common issues in this case." *Id.*

Finding that common questions predominated, the court certified a Rule 23(b)(3) class.  Amazon timely filed the Petition.

## III.   STANDARD OF REVIEW

In *Chamberlan*, this Court identified "the criteria we will consider in evaluating whether to permit an interlocutory appeal under Rule 23(f)."  402 F.3d at 955.[3]  While "the court of appeals…enjoy[s] 'unfettered discretion' to grant or deny permission to appeal[,]" this Court concluded that "Rule 23(f) review should be granted sparingly" and only in "rare cases."  *Id.* at 957, 959.

---

[3]   Unless otherwise noted, all emphasis is added and citations are omitted.

"Bearing in mind that many class certification decisions 'present familiar and almost routine issues that are no more worthy of immediate appeal than many other interlocutory rulings,'" *Chamberlan* holds that interlocutory review of certification decisions may be appropriate when:

> (1) there is a death-knell situation for either the plaintiff or defendant that is independent of the merits of the underlying claims, coupled with a class certification decision by the district court that is questionable; (2) the certification decision presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review; or (3) the district court's class certification decision is manifestly erroneous.

*Id.* at 959. None of these factors apply here.

## IV. ARGUMENT

### A. Amazon's Concessions Make This Case Unsuitable for Interlocutory Appeal

Amazon does not challenge the district court's Rule 23(a) findings. Nor does Amazon contest the court's certification of an injunctive relief class under Rule 23(b)(2). Thus, regardless of the outcome here, this matter will proceed to summary judgment and trial on a classwide basis, rendering it particularly unsuitable for interlocutory appeal. *See In re Sumitomo Copper Litig.*, 262 F.3d 134, 139-40 (2d Cir. 2001) ("Interlocutory review is particularly appropriate when it promises to spare the parties and the district court the expense and burden of litigating the matter to final judgment only to have it inevitably reversed by this Court on appeal after

final judgment. On the other hand, issues that would result at most in a modification of a certification order or whose ultimate resolution will depend on further factual development will be unlikely candidates for Rule 23(f) appeal.") (cleaned up).

Summary judgment is fully briefed. Order 4. If summary judgment is denied (as Plaintiffs anticipate), this case will proceed to trial in relatively short order with a Rule 23(b)(2) class. Given this posture, there is no need for this Court to grind the proceedings to a halt to resolve isolated attacks on only one of the two certified classes. *See Chamberlan*, 402 F.3d at 959. This is particularly true where, as here, Amazon does not argue *Chamberlan*'s "death-knell" factor justifies review.

### B. Amazon Fails to Raise an Unsettled Legal Issue or Manifest Error Regarding Standing

Amazon first argues that an interlocutory appeal is imperative due to "an unsettled and fundamental issue of law regarding class-action standing." Pet. 1. Pointing to the Supreme Court's proceedings in *Lab'y Corp. of Am. Holdings v. Davis*, 605 U.S. 327 (2025) ("*LabCorp*"), Amazon breathlessly proclaims that "[t]here currently is no more unsettled and fundamental issue relating to class actions than 'whether federal courts may certify a Rule 23 damages class that includes both injured and uninjured members.'" Pet. 8. This gets them nowhere.

Rule 23(f) review applies in rare cases where "the certification decision presents an unsettled and fundamental issue of law relating to class actions,

important both to the specific litigation and generally, that is likely to evade end-of-the-case review[.]" *Chamberlan*, 402 F.3d at 959. When the Supreme Court dismissed the *LabCorp* appeal as "improvidently granted," 605 U.S. at 327, the law reverted to its existing state before certiorari was granted. And, in this Circuit, the existing law is clear and settled: "Rule 23…permit[s] the certification of a class that potentially includes more than a de minimis number of uninjured class members." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 (9th Cir. 2022) (*en banc*); *Davis v. Lab'y Corp. of Am. Holdings*, 2024 WL 489288, at *2 n.1 (9th Cir. Feb. 8, 2024) (same). Accordingly, Ninth Circuit law on the inclusion of uninjured class members is far from "unsettled[,]" and there is no "fundamental" legal issue for this Court to resolve in this "specific litigation." *Chamberlan*, 402 F.3d at 959.[4]

Perhaps recognizing that point, Amazon endeavors to manufacture an unsettled question of Ninth Circuit law regarding some "confusion" on the interplay between predominance and standing as reflected in *Olean* and *Mazza v. Am. Honda*

---

[4] Amazon makes no effort to demonstrate that its contrived issue "is likely to evade end-of-the-case review." *Id.* at 959. This Court holds that "[r]equiring that class action plaintiffs actually prove classwide injury at this stage would improperly conflate the class certification inquiry with the merits." *Lytle v. Nutramax Labs., Inc.*, 114 F.4th 1011, 1025 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1308 (2025). Amazon can challenge any adverse standing rulings after final judgment. Amazon's failure to address this requirement further dooms the Petition.

*Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012). Pet. 8-13. This gambit fails too. *Olean* and *Mazza* are not in conflict. *See Chamberlan*, 402 F.3d at 961 ("We therefore decline Ford's invitation to identify an intra-circuit split where none exists.").

Quoting *Mazza*, Amazon boldly asserts that "it remains the unequivocal law in the Ninth Circuit that, for a class seeking ***damages***, 'no class may be certified that contains members lacking Article III standing.'" Pet. 10-11 (original emphasis). Amazon overstates that language's import. As this Court subsequently explained, "that statement [from *Mazza*] taken in context signifies only that it must be possible that class members have suffered injury, not that they did suffer injury, or that they must prove such injury at the certification phase." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1137 n.6 (9th Cir. 2016). Put differently, a "fortuitous non-injury to a subset of class members does not necessarily defeat certification of the entire class, particularly as the district court is well situated to winnow out those non-injured members at the damages phase of the litigation, or to refine the class definition." *Id.* at 1137.

As *Olean* further suggests, *Mazza* is best understood to require some inquiry into "whether the possible presence of uninjured class members means that the class definition is fatally overbroad." 31 F.4th at 669 n.14; *cf. Mazza*, 666 F.3d at 596 ("[T]he relevant class must be defined in such a way as to include only members

- 11 -

who were exposed to advertising that is alleged to be materially misleading.").  That said, "even a well-defined class may inevitably contain some individuals who have suffered no harm as a result of a defendant's unlawful conduct."  *Ruiz Torres*, 835 F.3d at 1136.  It is only "[w]hen a class is defined so broadly as to include a ***great number*** of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct, [that] the class is defined too broadly to permit certification."  *Olean*, 31 F.4th at 669 n.14.

Thus, *Mazza* does not stand for the "categorical[]" standing principle on which Amazon relies.  Pet. 12; *accord Olean*, 31 F.4th at 691 (dissent) ("To be sure, a plaintiff need not show that every single putative class member has suffered an injury.").  Rather than foment "confusion," Pet. 11, *Olean* simply chose not to resolve standing issues concerning the "possible presence of a large number of uninjured class members" because plaintiffs "demonstrated that all class members have standing here" based on common evidence of classwide collusion.  31 F.4th at 682; *see Ruiz Torres*, 835 F.3d at 1137 (distinguishing *Mazza*, and finding no standing issues "where the existence of a common policy or practice, if proven, is evidence that the class as a whole was exposed to purportedly misleading omissions").

Because there is no conflict within the Ninth Circuit, there is no "unsettled" question of law to resolve here.  *Chamberlan*, 402 F.3d at 961 ("Ford misreads the

- 12 -

two [purportedly conflicting] cases by overlooking the factual differences between them. The cases are not in conflict, nor do they indicate that there is an unsettled question of law.").

Nonetheless, Amazon persists, accusing the district court of committing "manifest error" by failing to "address the overbreadth of Plaintiffs' proposed classes, or analyze the implications of *Mazza* or the requirements of Article III." Pet. 15. Demonstrating manifest error worthy of a Rule 23(f) appeal is no easy task; it requires a showing that the "certification decision…is virtually certain to be reversed on appeal[.]" *Chamberlan*, 402 F.3d at 962. "[L]egal errors" involving "Rule 23 standard[s]" or "a directly controlling case" are necessary; disputes over "complex facts" do not suffice. *Id.*

Amazon fails to satisfy that high standard. The district court properly considered standing questions under binding precedent, and correctly concluded that Plaintiffs made a sufficient factual showing of standing at the certification stage.

For example, Plaintiffs' proffered class definition encompassed "[a]ll persons in the United States who registered one or more Alexa devices." Dkt. 255 at 2.[5] Plaintiffs submitted evidence that every Alexa-device registrant suffered injury

---

[5] Amazon's claim that this class definition is "unbounded by time" is nonsensical. Pet. 13. By filing a complaint, the WCPA's four-year statute of limitations applies. There is no end date yet because Amazon continues to violate the WCPA.

under the WCPA from Amazon's failure to disclose its collection and use of private voice recordings. And the district court accepted Plaintiffs' common evidence, finding that, "based on defendants' alleged design preferences in favor of over-recording, the business need for voice recordings, and defendants' calculated 'false wake rate,' Alexa-enabled devices record communications that were not intended for Alexa at least once a month." Order 6.

By contrast, the district court rejected—for lack of evidence—Amazon's claims that the class definition sweeps in large categories of uninjured persons:

> Putting aside the unknown efficacy of the 'do-not-save recordings' function, the option did not exist until September 2020, and there is no reason to assume that the 900,000 [Alexa users] were not recorded before that date. Nor is there any information from which the Court could hazard a guess regarding the number of Alexa users who only push-to-talk, are disabled, or never used a device they were given or purchased.

*Id.* Consistent with Ninth Circuit precedent, the court concluded that, "[e]ven if there are some people who own or live with an Alexa device who were never recorded, there is no reason to suspect, much less presume, that a significant or more than *de minimis* portion of the proposed class escaped recording." *Id.* at 6-7; *see Ruiz Torres*, 835 F.3d at 1136 (rejecting argument that "a class cannot be certified if it contains both injured and non-injured parties" as "unpersuasive" and "inaccurate").

The court revisited and again rebuffed Amazon's arguments when considering whether common questions of "injury" predominated. As the court explained, "[w]hile there is a hypothetical possibility that someone may have purchased and registered an Alexa device but never used it and/or that a nonverbal customer purchased a device advertised as a cloud-based voice service platform, the Ninth Circuit does not permit a defendant to support its invocation of individualized issues with mere speculation." *Id.* at 25 (cleaned up). The court continued, "[t]here being no logical reason to assume, much less evidence to show, that the individual issues defendants identify would bar any class members' recovery on the [WCPA] claim, and the Court will not allow speculation and surmise to tip the decisional scales at class certification." *Id.* at 25-26.

Consequently, the court held, "[i]f plaintiff prove their allegations regarding how Alexa works and what defendants do with the recording they collect, the loss of control over their voice data appears to be a class wide injury." *Id.* at 26; *see Olean*, 31 F.4th at 682 (evidence establishing "impact on a class-wide basis…is sufficient to show an injury-in-fact traceable to the defendants and redressable by a favorable ruling" for "standing"); *Ruiz Torres*, 835 F.3d at 1137-38 (no standing or predominance issues where "the conduct at issue is reasonably uniform as the crux of Plaintiffs' legal challenge involves a common failure to disclose information, and not merely a disparate series of affirmative statements").

- 15 -

As the district court's analysis makes plain, there is no manifest error here warranting immediate review. The court simply found that Amazon failed to present any evidence substantiating the existence of uninjured class members, and refused to credit Amazon's speculation. *Chamberlan*, 402 F.3d at 959 ("The kind of error most likely to warrant interlocutory review will be one of law, as opposed to an incorrect application of law to facts."). By failing to raise any virtually-certain-to-be-reversed legal (as opposed to purportedly factual) errors, the Court should deny the Petition. *See id.* at 962.

Lastly, Amazon takes aim at the district court's unremarkable ruling that "the concern that a class of all registrants may contain individuals who were never recorded does not preclude certification[,]" particularly where those "registrants…can be identified through…[an] account review[.]" Order 29. In so doing, Amazon contends that such an "account review" would be too onerous and implicate too many individualized issues. Pet. 16-17.

At its core, Amazon's position amounts to the absurd notion that it should be absolved from liability for misconduct that occurred on a grand scale. But no case holds that the greater the wrongdoing, the lesser the responsibility. While the class size may be large, the district court found that an account review will not be onerous such that individual standing issues predominate. *See* Order 29; *see also id.* at 30 (rejecting unmanageability attacks where "[t]he fact that millions of people were

- 16 -

allegedly injured by the same conduct suggests that representative litigation is the only way to both adjudicate related claims and avoid overwhelming the courts"). That ruling was well within the court's discretion. *See Blackie v. Barrack*, 524 F.2d 891, 906, n.22 (9th Cir. 1975) (discussing a district court's broad discretion in managing class issues); *Chamberlan*, 402 F.3d at 959 (Rule 23(f) appeals "undermine the district court's ability to manage the class action.").

Moreover, in discussing common injury, the court expressly rejected Amazon's assertions that "an individualized review of every recording associated with a registrant's account will be necessary in order to determine whether there were any false wakes." Order 26. The court correctly observed that "defendants misstate the nature of plaintiffs' CPA claim[,]" which is based on "defendants' failure to disclose that all recordings—whether intended for Alexa or not—are transcribed, reviewed, maintained, and used." *Id.* Other than disagreeing with that conclusion, Amazon offers no basis to suggest that the court's analysis was wrong.

There is no abuse of discretion in these rulings, let alone a manifest error, particularly where Amazon failed to "substantiate[]" with evidence that such "individualized issue[s]" regarding hypothetical uninjured class members exist in this case. *Van v. LLR, Inc.*, 61 F.4th 1053, 1069 (9th Cir. 2023); *Ruiz Torres*, 835 F.3d at 1137 (rejecting argument that predominance will "turn on the minutia of individual interactions and circumstances between Mercer and class members"

- 17 -

because "Mercer has not shown that the class as a whole was exposed to disparate information from various representatives of the defendant, creating materially different impressions") (cleaned up).

### C. Amazon Fails to Demonstrate Manifest Error Regarding Damages

Amazon next contends that an immediate appeal is necessary to correct the district court's rulings on certain damages issues. Pet. 17-24. Yet Amazon concedes the district court's central point, consistent with settled law, that individualized damages issues cannot defeat class certification. Order 28-29.

Instead, Amazon complains that the Order runs afoul of *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013), because "Plaintiffs failed to offer ***any*** model that is capable of reliably measuring their claimed injury under the WCPA." Pet. 17-18 (original emphasis). This is both untrue and, regardless, misses the point entirely; Plaintiffs need not provide any damage model to recover under the WCPA.

Indeed, "[t]he WCPA does not require a plaintiff to prove that it suffered monetary damages[.]" *Univ. Life Church Monastery Storehouse v. Am. Marriage Ministries*, 2022 WL 2317439, at *5 (W.D. Wash. June 28, 2022). Instead, Washington law is clear that, to recover under the WCPA, "[m]onetary damages need not be proved; unquantifiable damages may suffice." *Panag v. Farmers Ins.*

- 18 -

*Co. of Wash.*, 204 P.3d 885, 900 (Wash. 2009); *Mason v. Mortg. Am., Inc.*, 792 P.2d 142, 148 (Wash. 1990) (same).

So long as Plaintiffs establish a common ***injury*** (which they have), a jury may award minimal or nominal damages, at worst.  *See Panag*, 204 P.3d at 899-900 (citing numerous examples of non-monetary injuries cognizable under the WCPA); *Nordstrom, Inc. v. Tampourlos*, 733 P.2d 208, 211 (Wash. 1987) ("[N]o monetary damages need be proven, and…nonquantifiable injuries, such as loss of goodwill would suffice" under the WCPA.); Wash. Pattern Jury Instructions—Civ. §310.06 (7th ed.) (To sustain a WCPA claim, "no monetary amount need be proved and proof of any injury is sufficient, even if expenses or losses caused by the violation are minimal.").[6]

Accordingly, Amazon's *Comcast* arguments fall by the wayside.  The district court correctly recognized—***and Amazon now concedes***—that Plaintiffs established classwide injury: "If plaintiffs prove their allegations regarding how Alexa works and what defendants do with the recordings they collect, the loss of control over their voice data appears to be a class wide injury."  Order 26.  Plaintiffs need not quantify

---

[6]  Amazon misleads the Court by claiming the WCPA requires "actual damages." Pet. 18-19.  Even Amazon's lone case, *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 858 P.2d 1054, 1061 (Wash. 1993), says that actual damages are not an element of a WCPA claim.  That court also held that "loss of goodwill" and harm to "reputation" are cognizable.  *Id.* at 1063.

- 19 -

the precise value of that misappropriated "voice data" to recover under the WCPA. As such, there is no basis for a Rule 23(f) appeal.

In any event, the district court properly found, consistent with *Comcast*, that Plaintiffs demonstrated that "there are common methods for establishing the value of the voice data defendants took and used for their own purposes without compensation[.]" Order 28. Undergirding this ruling, Plaintiffs offered Dr. Hochman's opinion, based on multiple metrics, that "[e]ach user's data, such as utterances collected by Alexa, has discrete value by itself." Dkt. 255-12 ¶¶47, 68-79, 95-96.

Amazon disputes Dr. Hochman's opinions on the "value" of such misappropriated data, claiming they are faulty because he "argued that Alexa recordings have value to Amazon[,]" a point which Amazon contends is "irrelevant" to Plaintiffs' theory of damages. Pet. 17-18. Amazon is misguided.

Because "injuries compensable under the CPA are relatively expansive[,]" *Frias v. Asset Foreclosure Servs., Inc.*, 334 P.3d 529, 538 (Wash. 2014), courts have found the "injury" element of the WCPA (and analogous consumer statutes) satisfied where, as here, personal information was collected and used without consent for the benefit of the data collector. *See Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at *11 (W.D. Wash. 2024) (sustaining WCPA claim where "Plaintiffs sufficiently allege that the personal, health, and financial information of Plaintiffs

- 20 -

and the Class Members is valuable and has become a highly desirable commodity, and cite several secondary sources describing the existing market for and estimating the economic value of personal health data") (cleaned up); *Brown v. Google LLC*, 2021 WL 6064009, at \*17 (N.D. Cal. Dec. 22, 2021) (finding plaintiffs "lost money or property" under California law where plaintiffs "provided valuable data to Google and have received **no** money in return") (original emphasis).

Thus, Dr. Hochman is correct: Plaintiffs' private conversations have "value," and Plaintiffs suffered cognizable injuries under the WCPA from Amazon's misappropriation of that data. Consistent with Dr. Hochman's opinions, the record below shows that Amazon uses Alexa voice recordings to create and sell other products (Dkt. 487 at 2-3), and views its customer data as a valuable "asset." Dkt. 366 at 10-11. That Amazon derives a quantifiable monetary value from registrants' private communications only proves Plaintiffs' point.

Amazon relies heavily on *Del Vecchio v. Amazon.com, Inc.*, 2012 WL 1997697 (W.D. Wash. June 1, 2012), for the position that "**under the WCPA**, it is not enough to allege only that information has value to Defendant; the term 'loss' requires that Plaintiffs suffer a detriment." Pet. 18 (cleaned up). That citation is disingenuous.

The quoted language from *Del Vecchio* involves the **Computer Fraud and Abuse Act**—not the WCPA—a statute that contains a specific, narrow definition of

- 21 -

"loss" at odds with the expansive view of "injury" adopted by Washington courts. *Del Vecchio*, 2012 WL 1997697, at *4. Highlighting this distinction, the *Del Vecchio* court, in a later discussion of the WCPA, found that plaintiffs could "allege an injury if they can demonstrate that Defendant accessed their…information without authorization[,]" as Plaintiffs do here. *Id.* at *6. *Del Vecchio* is inapt.

Amazon next maintains that Plaintiffs failed to provide a viable damage model. While not mentioning *Comcast* by name, the district court undoubtedly undertook the required analysis, concluding that Plaintiffs' evidentiary showing passed muster. Order 28. There is no manifest error here. *Chamberlan*, 402 F.2d at 961 ("[A] rigorous analysis does not always result in a lengthy explanation or in-depth review of the record.").

Contrary to Amazon's argument, Plaintiffs did propose a "workable model to measure…damages on a classwide basis." *See* Pet. 20. As Dr. Hochman testified— and as the district court recognized—Plaintiffs provided at least two methods to measure damages: "(a) the fair market value of individual utterances or monthly subscriptions for the data and (b) the costs [D]efendants currently incur to acquire non-Alexa voice recordings." Order 28.

For instance, Dr. Hochman identified that, ███████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

- 22 -

████████████████████████████████  Dkt. 255-

12 ¶83 (cleaned up).  Dr. Hochman also concluded that companies offer users as much as "$50 a month" for their "personal data."  *Id.* at ¶95.  As the district court correctly noted, "Defendants have not suggested any reason to doubt that a per utterance value can be obtained."  Order 28.

While Dr. Hochman "stop[ped] short of applying the model or method," *id.* at 28 n.6, Plaintiffs "need not show the actual amount of damages incurred at the time of class certification," *Noohi v. Johnson & Johnson Consumer Inc.*, 2025 WL 2089582, at *5 (9th Cir. July 25, 2025) (cleaned up).  Following this Court's precedent, the district court correctly found that Plaintiffs "present[ed] a model or method for establishing that value [of the recordings] which is viable given the facts of the case."  Order 28 n.6; *see Brown*, 2021 WL 6064009, at *15 (noting, as evidence for injury, that Google pays "users up to $3 per week to add a browser extension that shares with Google the sites they visit and how they use them" and "a number of platforms have appeared where consumers can and do directly monetize their own data") (cleaned up).

Amazon further contends that the court "failed to consider or address…objections to the admissibility of Hochman's opinions."  Pet. 23. "[E]valuation of an unexecuted damages model at class certification requires determining whether the expert's methodology is reliable, so that a limited *Daubert*

- 23 -

analysis may be necessary, but the more full-blown *Daubert* assessment of the results of the application of the model would be premature." *Noohi*, 2025 WL 2089582, at *4 (cleaned up). Thus, the "the ultimate inquiry is whether a proposed model is likely to provide common answers at trial." *Id.* (cleaned up). Here, while Amazon's criticisms of Dr. Hochman's model are meritless for the reasons set forth in Plaintiffs' *Daubert* opposition (Dkt. 360), "an inquiry into the evidence's ultimate admissibility should go to the weight that evidence is given at the class certification stage[,]" *Nohi*, 2025 WL 2089582, at *4 (cleaned up); *id.* at *6 ("[T]he district court in this case did not abuse its discretion in finding that JJCI's challenges to Dr. Roberts' opinion evidence were 'not ripe' at the class certification stage."). As it stands, Dr. Hochman's opinion provides a common method to value the recordings Amazon unlawfully collected, assuming one is necessary under the WCPA.

Again, Amazon fails to demonstrate any manifest error. Even if Amazon could show some error in the court's decision not to conduct a full-blown *Daubert* analysis at class certification, such error is not manifest. *Chamberlan*, 402 F.3d at 959 ("The error in the district court's decision must be significant; bare assertions of error will not suffice."). Plaintiffs maintain that no damage analysis was required under the WCPA, which obviates any need to resolve the *Daubert* motion at the class-certification stage.

Moreover, Amazon's motion for summary judgment and related *Daubert* motions are fully briefed, so the district court will imminently decide the merits of Plaintiffs' claims and address each expert's methodology.  There is no need for immediate review now through a time-consuming appeal when the issues raised by Amazon may soon become moot.  *Chamberlan*, 402 F.3d at 959 ("Interlocutory appeals are generally disfavored because they…require consideration of issues that may become moot, and undermine the district court's ability to manage the class action.").

## V.    CONCLUSION

The Court should deny the Petition.

DATED:  August 11, 2025

ROBBINS GELLER RUDMAN &
   DOWD LLP
STUART A. DAVIDSON
MARK J. DEARMAN


*s/ Mark J. Dearman*
MARK J. DEARMAN

225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

4912-1458-4925.v1

MICHAEL P. CANTY
CAROL C. VILLEGAS
LABATON KELLER SUCHAROW LLP
140 Broadway
New York, NY  10005
Telephone:  212/907-0700
212/818-0477 (fax)

Attorneys for Plaintiffs-Respondents Kaeli
Garner, et al.

## STATEMENT OF RELATED CASES
(Circuit Rule 28-2.6)

Plaintiffs-Respondents' counsel is not aware of any related cases pending before this Court.

Dated: August 11, 2025

ROBBINS GELLER RUDMAN
& DOWD LLP

By: *s/ Mark J. Dearman*
MARK J. DEARMAN

- 27 -

## CERTIFICATE OF COMPLIANCE

I certify that this brief contains 5,595 words, excluding the items exempted by Federal Rule of Appellate Procedure 5(b)(1)(E). The brief's type size and typeface comply with Federal Rule of Appellate Procedure 32(a)(5) and (6), as it has been prepared in a proportional typeface in 14-point Times New Roman font.

I certify that this brief complies with the limit set forth in Circuit Rule 32-3 because the word count divided by 280 does not exceed the 20-page limit designated by Rule 5-2(b).

Dated: August 11, 2025        ROBBINS GELLER RUDMAN
                                           & DOWD LLP

                                         By:      *s/ Mark J. Dearman*
                                               MARK J. DEARMAN

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2025, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system, and caused a copy of the foregoing to be electronically served via email on the following:

| | |
|---|---|
| Brian D. Buckley<br>Y. Monica Chan<br>Fenwick & West LLP<br>401 Union Street, 5th Floor<br>Seattle, WA 98101<br>bbuckley@fenwick.com<br>mchan@fenwick.com | Jedediah Wakefield<br>Tyler G. Newby<br>Armen Nercessian (CSB No. 284906)<br>Fenwick & West LLP<br>555 California Street, 12th Floor<br>San Francisco, CA 94104<br>jwakefield@fenwick.com<br>tnewby@fenwick.com<br>anercessian@fenwick.com |
| Paul J. Geller<br>Stuart A. Davidson<br>Mark J. Dearman<br>Alexander C. Cohen<br>Nicolle B. Brito<br>Robbins Geller Rudman & Dowd LLP<br>225 NE Mizner Blvd, Suite 720<br>Boca Raton, FL 33432<br>pgeller@rgrdlaw.com<br>sdavidson@rgrdlaw.com<br>mdearman@rgrdlaw.com<br>acohen@rgrdlaw.com<br>nbrito@rgrdlaw.com | Michael P. Canty<br>Carol C. Villegas<br>Guillaume Buell<br>David Saldamando<br>Danielle Izzo<br>Gloria J. Medina<br>Michael Hotz<br>Labaton Keller Sucharow LLP<br>140 Broadway<br>New York, NY 10005<br>mcanty@labaton.com<br>cvillegas@labaton.com<br>dsaldamando@labaton.com<br>gbuell@labaton.com<br>dizzo@labaton.com<br>gmedina@labaton.com<br>mhotz@labaton.com |

- 29 -

| | |
|---|---|
| Bradley S. Keller<br>Byrnes Keller Cromwell LLP<br>1000 Second Avenue, 38th Floor<br>Seattle, WA 98104<br>bkeller@byrneskeller.com | Brian C. Gudmundson<br>Jason P. Johnston<br>Michael J. Laird<br>Zimmerman Reed LLP<br>1100 IDS Center<br>80 S. 8th Street<br>Minneapolis, MN 55402<br>brian.gudmundson@zimmreed.com<br>jason.johnston@zimmreed.com<br>michael.laird@zimmreed.com |
| Alec M. Leslie<br>Max S. Roberts<br>Bursor & Fisher, P.A.<br>1330 Avenue of the Americas<br>New York, NY 10019<br>aleslie@bursor.com<br>mroberts@bursor.com | L. Timothy Fisher<br>Bursor & Fisher, P.A.<br>1990 N. California Blvd., Suite 940<br>Walnut Creek, CA 94506<br>ltfisher@bursor.com |
| Rebecca A. Peterson<br>Lockridge Grindal Nauen P.L.L.P.<br>100 Washington Avenue, Suite 2200<br>Minneapolis, MN 55401<br>rapeterson@locklaw.com | Brendan S. Thompson<br>Charles J. LaDuca<br>Cuneo Gilbert & Laduca LLP<br>4725 Wisconsin Avenue, Suite 200<br>Washington, DC 20016<br>brendant@cuneolaw.com<br>charlesl@cuneolaw.com |
| Caleb L. Marker<br>Zimmerman Reed LLP<br>6420 Wilshire Blvd., Suite 1080<br>Los Angeles, CA 90048<br>caleb.marker@zimmreed.com | Michael J. Flannery<br>Cuneo Gilbert & Laduca LLP<br>Two Cityplace Drive, 2nd Floor<br>Saint Louis, MO 63141<br>mflannery@cuneolaw.com |
| Robert K. Shelquist<br>Cuneo Gilert & LaDuca, LLP<br>5775 Wayzata Blvd., Suite 620<br>St. Louis Park, MN 55416<br>rkshelquist@cuneolaw.com | Thomas G. Hoffman, Jr.<br>Labaton Keller Sucharow LLP<br>140 Broadway<br>New York, NY 10005<br>thoffman@labaton.com |

| Manish Borde<br>Borfde Law PLLC<br>1700 7th Avenue, Suite 2100<br>Seattle, WA 98101<br>mborde@bordelaw.com | |

Dated:  August 11, 2025

ROBBINS GELLER RUDMAN
  & DOWD LLP

By:    *s/ Mark J. Dearman*
      MARK J. DEARMAN

- 31 -

4912-1458-4925.v1