# EXHIBIT A

*No. 25-4510*

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

KAELI GARNER, et al.,

*Plaintiffs-Respondents,*

v.

AMAZON.COM, INC., a Delaware Corporation, and AMAZON.COM SERVICES, LLC, a Delaware Limited Liability Company;

*Defendants-Petitioners,*

---

**The United States District Court
Western District of Washington
Hon. Robert S. Lasnik
Case No. 2:21-cv-00750-RSL**

---

**REPLY BRIEF IN SUPPORT OF AMAZON.COM, INC.
AND AMAZON.COM SERVICES, LLC'S
RULE 23(F) PETITION FOR PERMISSION TO APPEAL**

---

| | |
|---|---|
| Brian D. Buckley (WSBA No. 26423) | Jedediah Wakefield (CSB No. 178058) |
| Y. Monica Chan (WSBA No. 58900) | Tyler G. Newby (CSB No. 205790) |
| FENWICK & WEST LLP | Armen Nercessian (CSB No. 284906) |
| 401 Union Street, 5th Floor | FENWICK & WEST LLP |
| Seattle, WA 98101 | 555 California Street, 12th Floor |
| Telephone: 206.389.4510 | San Francisco, CA 94104 |
| Facsimile: 206.389.4511 | Telephone: 415.875.2300 |
| | Facsimile: 415.281.1350 |

Counsel for Defendants-Petitioners
*Amazon.com, Inc. and Amazon.com Services, LLC*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

ANALYSIS............................................................................................................2

    A.    PLAINTIFFS MISSTATE THE RULE 23(F) FRAMEWORK. ...............................................................................2

    B.    WIDESPREAD CONFUSION ON THE ISSUE OF CLASS-MEMBER STANDING UNDERSCORES THE NEED FOR REVIEW. ...............................................................................4

    C.    THE DISTRICT COURT'S DEPARTURE FROM *COMCAST* AND NINTH-CIRCUIT LAW ON CLASSWIDE DAMAGES WAS MANIFESTLY ERRONEOUS. ...............................................................................8

    D.    THE DISTRICT COURT'S FAILURE TO CONDUCT ANY RIGOROUS ANALYSIS OF PLAINTIFFS' DAMAGES EVIDENCE WAS MANIFEST ERROR.......................11

CONCLUSION ...................................................................................................12

CERTIFICATE OF COMPLIANCE ..................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Brown v. Google LLC*,
  No. 20-CV-03664-LHK, 2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) ....... 9, 10

*Castillo v. Costco Wholesale Corp.*,
  No. 2:23-cv-01548-JHC, 2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) ................................................................................................. 9, 10

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) .................................................................................. 8, 9, 12

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ............................................................................ 12

*Lab Corp. of Am. Holdings v. Davis*,
  145 S. Ct. 1608 (2025) ........................................................................................ 4

*Lytle v. Nutramax Labs., Inc.*,
  114 F.4th 1011 (9th Cir. 2024) ........................................................................ 11

*Mazza v. Am. Honda Motor Co., Inc.*,
  666 F.3d 581 (9th Cir. 2012) ..................................................................... 1, 6, 7

*Miller v. Amazon.com, Inc.*,
  No. 21-cv-204-BJR, 2025 WL 1810161 (W.D. Wash. July 1, 2025) .............. 7, 8

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) (en banc) ................................................... 1, 5, 6, 7

*Ruiz Torres v. Mercer Canyons Inc.*,
  835 F.3d 1125 (9th Cir. 2016) ........................................................................ 6, 7

*Van v. LLR, Inc.*,
  61 F.4th 1053 (9th Cir. 2023) ............................................................................. 5

**STATUTES AND RULES**

Fed. R. App. P. 5(d)(2) ........................................................................................... 3

Fed. R. Civ. P. Rule 23 ................................................................................ *passim*

## INTRODUCTION

For over a decade, the Ninth Circuit has recognized that "no class may be certified that contains members lacking Article III standing." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 594 (9th Cir. 2012). In 2022, the Ninth Circuit reaffirmed this bedrock rule, declaring that *Mazza* remains "good law" for damages class actions like this one. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 n.32 (9th Cir. 2022) (en banc). The district court erred under *Mazza* and *Olean* by certifying a class that includes *all* Alexa registrants, because simply registering an Alexa device does not align with or even approximate Plaintiffs' actual theory of injury, which is the alleged loss of the value of their Alexa recordings.

Plaintiffs acknowledge that the certified class includes many people who were never recorded and therefore have no injury. But they misread and misapply *Olean* to argue that courts can certify an overbroad class, then later address the "significant or more than de minimis portion" of members who lack Article III standing. But, like the district court, Plaintiffs conflate two distinct legal issues: (1) the Article III problem that is created when a class definition is so broad that it sweeps up uninjured parties, and (2) the separate Rule 23 requirement that common issues predominate over individual ones. This error is emblematic of the broader confusion within the

1

Ninth Circuit on absent-class-member standing. The Court should grant review to clarify this important issue.

The district court also erred by certifying a class without requiring a classwide damages model. Plaintiffs now claim that they do not need any damages model because the WCPA allows nominal damages, while also arguing that their proposed expert, Jonathan Hochman, proposed two models. Both arguments contradict their own case theory, the relief they are requesting, and the undisputed evidence. Plaintiffs moved to certify a class seeking *actual* damages for the alleged loss of the value of registrants' recordings. Under Rule 23, Plaintiffs were then required to propose a methodology for measuring that specific economic harm on a classwide basis. Plaintiffs' Answer confirms that neither they nor their experts offered any such methodology, which Hochman conceded in his deposition. The Answer also tacitly acknowledges that the district court erred by ignoring Amazon's objections to Plaintiffs' flawed evidence. These fundamental errors justify immediate review.

## ANALYSIS

### A. PLAINTIFFS MISSTATE THE RULE 23(F) FRAMEWORK.

Plaintiffs fundamentally misunderstand how Rule 23(f) petitions work. They incorrectly claim that filing the petition constitutes a "concession" of issues and will "grind the proceedings to a halt." *See, e.g.*, Ans. 8-9, 18-19. But a Rule 23(f) petition is simply "a petition for permission to appeal." Fed. R. Civ. P. 23(f). If granted, the

2

Court sets the appeal date, Fed. R. App. P. 5(d)(2), and then normal appellate briefing begins. Unlike opening briefs on appeal, where the failure to raise an issue can result in waiver, Plaintiffs cite no authority showing that petitioners "waive" or "concede" issues by not addressing them in the initial petition—before any appeal has even started. Moreover, Rule 23(f) explicitly provides that granted appeals "do not stay proceedings in the district court unless the district judge or the court of appeals so orders." Fed. R. Civ. P. 23(f). As such, Plaintiffs' concern about an appeal slowing or halting the trial court proceedings is at best premature. Ans. 9.

Plaintiffs argue that the Court should deny review because Amazon failed to address *Chamberlan*'s "death-knell" factor. *Id.* But the "death-knell" factor is merely one of several considerations under Rule 23(f), not a mandatory requirement that petitioners must address in order to obtain review. Plaintiffs also ignore a primary reason that Rule 23(f) exists: class certification orders "may force a defendant to settle rather than incur the costs of defending a class action and run the risk of potentially ruinous liability." Fed. R. Civ. P. 23, Advisory Committee Notes to 1998 Amendments, Subdivision (f). Rule 23(f) addresses that concern by granting "the court of appeals a discretionary power to grant interlocutory review in cases that show appeal-worthy certification issues." *Id.* The district court's certification of an overbroad registrant class—seeking damages that could never be measured on a classwide basis—creates exactly the type of coercive settlement pressure that

3

Rule 23(f) was designed to address. By the same token, these issues could evade end-of-the-case review because, as Justice Kavanaugh observed, "[o]verbroad and incorrectly certified classes threaten massive liability …. That reality in turn can coerce businesses into costly settlements that they sometimes must reluctantly swallow rather than betting the company on the uncertainties of trial." *Lab Corp. of Am. Holdings v. Davis*, 145 S. Ct. 1608, 1612 (2025) (Kavanaugh, J., dissenting).

Amazon has established that the Order is manifestly erroneous and that immediate review is warranted under Rule 23(f).

### B. WIDESPREAD CONFUSION ON THE ISSUE OF CLASS-MEMBER STANDING UNDERSCORES THE NEED FOR REVIEW.

The district court committed manifest error by certifying a class of all Alexa device registrants, without regard to when or how they registered, their knowledge of Alexa's recording practices, whether they consented to those practices, or whether they were ever actually recorded during a false wake. This overbroad definition creates three insurmountable problems. First, as Plaintiffs and the district court acknowledge, the class includes vast numbers of registrants—at least hundreds of thousands, but likely millions—who were never recorded at all, meaning they have no conceivable injury and lack Article III standing. *See* Order at 29; Ans. 16.

Second, given the district court's ruling that Alexa registrants consent to recordings of *intentional* commands (Dkt. 91 at 17), the only class members who

4

could potentially establish standing are those who both (1) did not understand and consent to false wake recordings, and (2) were actually recorded during false wakes. But, as defined, the class includes hundreds of thousands of people who cannot satisfy those factual requirements.

Third, as Plaintiffs implicitly acknowledge, many class members' claims are time-barred under the WCPA's four-year statute of limitations because Alexa launched in 2014 and this lawsuit began in 2021.

The result is a class that is too broad (including many uninjured parties without standing) and that will require an overwhelming number of individualized inquiries across tens of millions of class members. Under Ninth Circuit precedent, Plaintiffs must prove that common issues predominate over individual questions, but they cannot explain how individualized "class-member-by-class-member assessments" would be workable here. *Van v. LLR, Inc.*, 61 F.4th 1053, 1069 (9th Cir. 2023) (vacating class certification).

Plaintiffs try to defend the district court's Order by citing two sentences from *Olean* (Ans. 2, 5) where the Court rejected the dissent's argument that "***Rule 23*** does not permit the certification of a class that potentially includes more than a de minimis number of uninjured class members" because "[t]his position is inconsistent with ***Rule 23(b)(3)***." *Olean*, 31 F.4th at 669 (emphases added). But as the Court's citations make clear, that portion of *Olean* addresses predominance under Rule 23,

*not* the threshold constitutional requirement of Article III standing. Those are two distinct inquiries. The predominance inquiry asks whether factual questions about *potentially* uninjured class members predominate over common issues, such that class treatment becomes unworkable. By contrast, the Article III inquiry asks the more fundamental question of whether the class definition necessarily includes members who lack constitutional standing because they cannot conceivably have been injured. On this latter issue, *Mazza* established the controlling rule: "no class may be certified that contains members lacking Article III standing." 666 F.3d at 594. Instead, the class "must be defined in such a way as to include only members who were exposed" to the challenged conduct and potentially harmed by it. *Id.* at 596. Far from undermining *Mazza*, *Olean* reinforced that bedrock rule by instructing courts to "consider whether the possible presence of uninjured class members means that the class definition is fatally overbroad." 31 F.4th at 669 n.14.

Plaintiffs admit that "*Olean* and *Mazza* are not in conflict," Ans. 11, and Amazon agrees. Plaintiffs nonetheless try to undermine *Mazza*'s authority, citing *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125 (9th Cir. 2016). *Ruiz* involved a farm operator who allegedly failed to disclose the availability of work under a federal program, and the proposed class included both workers and job seekers. The Court found that because the claimed injury arose from a *lack of information*, all potential class members *could* have been injured by the operator's failure to disclose,

6

and any "fortuitous non-injury" (like someone not wanting the work) could be handled during the damages phase. *Id.* at 1135–37. Even so, the Court reinforced *Mazza* by explaining that a class cannot be certified if it includes class members who "were never *exposed* to the challenged conduct to begin with." *Id.* 1136-37; *see also Mazza*, 666 F.3d at 596 (similar). In other words, for a class to be properly defined, the plaintiffs' theory of injury must "actually map onto the membership of the class." *Ruiz*, 835 F.3d at 1138–39 (citation modified).

That is not the situation here. Plaintiffs contend that Amazon wrongfully intercepted and used false wake recordings, depriving Alexa users of the value of those recordings. *See, e.g.*, Ans. 3-4, 6; Dkt. 255 (Class Cert. Mot.) at 12-13. But simply registering an Alexa device does not mean a registrant was ever recorded by Alexa, let alone recorded during a false wake. Membership in the registrant class is thus wholly detached from the alleged injury, which confirms that the district court got it wrong under *Mazza*, *Olean*, and *Ruiz*.

Plaintiffs' and the district court's misreading of these and other Ninth Circuit cases reflect a larger pattern of uncertainty among district courts as to whether absent class members must have Article III standing for a class to be certified. For example, in *Miller v. Amazon.com, Inc.*, the court observed that while *Olean* dealt with predominance—a concept similar to Article III standing—there is a lack of consensus among courts on how Article III's standing requirement applies to class

7

actions. No. 21-cv-204-BJR, 2025 WL 1810161, *4 (W.D. Wash. July 1, 2025). The Court should grant review to provide guidance on this critical issue.

### C. THE DISTRICT COURT'S DEPARTURE FROM *COMCAST* AND NINTH-CIRCUIT LAW ON CLASSWIDE DAMAGES WAS MANIFESTLY ERRONEOUS.

As Amazon explained in its Petition, the district court manifestly erred by certifying a class without having a viable method to measure classwide damages that aligns with Plaintiffs' legal theory. Pet. 17-24. Plaintiffs respond by retreating from their own claims and theories, arguing instead that they do not need a damages model because nominal damages, loss of goodwill, or reputational harm suffice under the WCPA. *See* Ans. 18-19, n.6. But while that argument might be true in the abstract, it has never been Plaintiffs' damages theory. Plaintiffs claim that registrants "suffered ***monetary harm*** from Amazon's use of their audio recordings for its own benefit" and that losing the value of that data "constitutes a common injury" for all class members. Dkt. 255 at 22-23 (emphasis added). Having relied exclusively on this monetary harm theory throughout the case, Plaintiffs were required to prove a viable method for measuring monetary harm on a classwide basis.[1] *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013).

---

[1] While reputational harm and loss of goodwill may be recognized injuries in other WCPA cases, Plaintiffs have never advanced those theories and they do not remotely fit the facts of this case.

8

Plaintiffs failed to meet their burden. Plaintiffs admit that their evidence shows, at most, that "Amazon derives a quantifiable monetary value" from Alexa recordings. Ans. 21. But that is plainly insufficient under *Comcast*, which requires a damages model to measure only those damages attributable to the plaintiff's legal theory. *Comcast*, 569 U.S. at 35. Plaintiffs' evidence fails that requirement in two respects. First, Plaintiffs offer no method for measuring the value that registrants *lost*, which is distinct from any value derived by Amazon. Second, Plaintiffs offer no method for measuring *how many* false wake recordings, if any, were attributable to each Alexa registrant without conducting an impossibly burdensome recording-by-recording review across millions of Alexa accounts. Without that data point (the number of false wakes recordings), there is no way to calculate lost value on a classwide basis. The district court erred in ignoring these fundamental defects and misapplying *Comcast*.

Plaintiffs also try to excuse their failure to present a damages model by citing two cases for the proposition that losing the value of personal data can constitute injury. Ans. 20 (citing *Castillo v. Costco Wholesale Corp.*, No. 2:23-cv-01548-JHC, 2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) and *Brown v. Google LLC*, No. 20-CV-03664-LHK, 2021 WL 6064009 (N.D. Cal. Dec. 22, 2021)). But *Castillo* and *Brown* are irrelevant here. Those cases were decided at the motion to dismiss stage and addressed the issue of whether plaintiffs had plausibly pleaded an injury—not

9

whether they had proved a viable method for calculating classwide damages. Those are two very different inquiries, and even if losing the value of personal data could theoretically constitute injury, that does not mean the resulting damages are capable of being calculated on a classwide basis. Moreover, plaintiffs in those cases relied on the existence of marketplaces for the data at issue to allege that it had economic value. *Castillo*, 2024 WL 4785136, at *11; *Brown*, 2021 WL 6064009, at *15. Here, by contrast, neither Plaintiffs nor their experts identified any existing marketplace that pays individuals for their voice data or recordings. Plaintiffs themselves testified that they are not aware of any such marketplace and, in any event, do not plan to sell their voice data. *Castillo* and *Brown* are thus far afield.

Plaintiffs also attempt to excuse their failure to present a damages model by claiming that their purported damages expert, Jonathan Hochman, identified Amazon's per-utterance cost. Ans. 22-23. He did not. Hochman's report merely quotes from a single Amazon document describing Amazon's estimated cost to pay participants for their *time* to generate *scripted recordings* in a *controlled lab environment*. *See* Pet., Ex. B (Hochman report), ¶ 83. Plaintiffs do not dispute that Hochman has offered no method (1) to translate those costs into value in a real-world setting (e.g., noisy environments, snippets of sound, indecipherable gibberish), (2) to map that value onto Plaintiffs' theory of false-wake recordings, or (3) to otherwise calculate what value registrants supposedly *lost*. And if there were any lingering

10

doubt, Hochman himself testified that he has not "opine[d] about the methodology" for valuing voice data, and "what that exact value is numerically would require further workup that [he] was not asked to do." Dkt. 315-2.

Ultimately, this is not a close case. Plaintiffs do not even "gesture at a model or describe a general method," much less offer any model to measure classwide damages based on Plaintiffs' theory. *Lytle v. Nutramax Labs., Inc.*, 114 F.4th 1011, 1032 (9th Cir. 2024) (citation modified). The district court's Order was therefore manifestly erroneous on this basis as well.

### D. THE DISTRICT COURT'S FAILURE TO CONDUCT ANY RIGOROUS ANALYSIS OF PLAINTIFFS' DAMAGES EVIDENCE WAS MANIFEST ERROR.

The district court also manifestly erred by failing to rule on Amazon's motion to exclude Plaintiffs' damages expert, Hochman, before ruling on Plaintiffs' class certification motion. Had the district court conducted even a limited *Daubert* analysis (*see* Pet 22–23), it would have been apparent that Hochman's opinions were unreliable and unsupported, and that he offered no damages methodology at all (as Hochman himself conceded). Instead, the district court simply credited Hochman's opinions to erroneously conclude that Plaintiffs had presented a viable method for calculating classwide damages. *See* Dkt. 312 (Amazon's Mot. to Exclude Hochman); Pet., Ex. C (Hitt Rebuttal Report), ¶¶ 47-74 (opining that Hochman

11

presented no method to establish the value of any particular Alexa recording). That was manifest error.

Plaintiffs do not dispute that the district court erred, but they argue, without support, that it was not *manifest* error. See Ans. 23-24. This argument contradicts the foundational principle that district courts must conduct a "rigorous analysis" to ensure that class action plaintiffs have met the requirements of Rule 23. *Comcast*, 569 U.S. at 35. In *Ellis v. Costco Wholesale Corp.*, the Court vacated a certification order because the district court erred by "end[ing] its analysis of the plaintiffs' [expert] evidence after determining such evidence was merely admissible" under *Daubert*, without resolving disputes raised by defendant's rebuttal expert. 657 F.3d 970, 982-84 (9th Cir. 2011). Here, the district court did not even complete the first step of deciding admissibility under *Daubert*, let alone conduct a rigorous analysis of the disputes raised by Amazon's rebuttal expert. This is manifest, reversible error.

## CONCLUSION

Amazon respectfully asks this Court to exercise its discretion under Rule 23(f) to grant immediate review of the Order.

Dated: August 18, 2025　　　Respectfully submitted,

　　　　　　　　　　　　　　FENWICK & WEST LLP

　　　　　　　　　　　　　　By: *s/ Brian D. Buckley*
　　　　　　　　　　　　　　　　Brian D. Buckley (WSBA No. 26423)

　　　　　　　　　　　　　　　　Counsel for Defendants-Petitioners
　　　　　　　　　　　　　　　　AMAZON.COM, INC. and
　　　　　　　　　　　　　　　　AMAZON.COM SERVICES, LLC

## CERTIFICATE OF COMPLIANCE

I certify that this document contains 2,792 words. The document's type size and typeface comply with Federal Rule of Appellate Procedure 32(a)(5) and (6), as it has been prepared in a proportional typeface in 14-point Times New Roman font.

Dated: August 18, 2025.     FENWICK & WEST LLP


By: *s/ Brian D. Buckley*
    Brian D. Buckley (WSBA No. 26423)

    Counsel for Defendants-Petitioners
    AMAZON.COM, INC. and
    AMAZON.COM SERVICES, LLC

# CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2025, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system, and caused a copy of the foregoing **REPLY BRIEF IN SUPPORT OF AMAZON.COM, INC. AND AMAZON.COM SERVICES, LLC'S RULE 23(F) PETITION FOR PERMISSION TO APPEAL** to be electronically served via email on:

Bradley S. Keller
**Byrnes Keller Cromwell LLP**
1000 Second Avenue, 38th Floor
Seattle, WA 98104
Email: bkeller@byrneskeller.com

Paul J. Geller
Stuart A. Davidson
Mark J. Dearman
Alexander C. Cohen
Nicolle B. Brito
Maxwell H. Sawyer
**Robbins Geller Rudman & Dowd LLP**
225 NE Mizner Blvd, Suite 720
Boca Raton, FL 33432
Email:  pgeller@rgrdlaw.com
 sdavidson@rgrdlaw.com
 mdearman@rgrdlaw.com
 acohen@rgrdlaw.com
 nbrito@rgrdlaw.com

Brian C. Gudmundson
Jason P. Johnston
Michael J. Laird
**Zimmerman Reed LLP**
1100 IDS Center

Michael P. Canty
Carol C. Villegas
Guillaume Buell
David Saldamando
Danielle Izzo
Gloria J. Medina
Michael Hotz
**Labaton Keller Sucharow LLP**
140 Broadway
New York, NY 10005
Email*:* mcanty@labaton.com
 cvillegas@labaton.com
 dsaldamando@labaton.com
 gbuell@labaton.com
 dizzo@labaton.com
 gmedina@labaton.com
 mhotz@labaton.com

Alec M. Leslie
Max S. Roberts
**Bursor & Fisher, P.A.**
1330 Avenue of the Americas
New York, NY 10019
Email: aleslie@bursor.com
 mroberts@bursor.com

15

| | |
|---|---|
| 80 S. 8th Street<br>Minneapolis, MN 55402<br>Email: brian.gudmundson@zimmreed.com<br>          jason.johnston@zimmreed.com<br>          michael.laird@zimmreed.com | L. Timothy Fisher<br>**Bursor & Fisher, P.A.**<br>1990 N. California Blvd., Suite 940<br>Walnut Creek, CA 94506<br>Email: ltfisher@bursor.com |
| Rebecca A. Peterson<br>**Lockridge Grindal Nauen P.L.L.P.**<br>100 Washington Avenue, Suite 2200<br>Minneapolis, MN 55401<br>Email: rapeterson@locklaw.com | Brendan S. Thompson<br>Charles J. LaDuca<br>**Cuneo Gilbert & Laduca LLP**<br>4725 Wisconsin Avenue, Suite 200<br>Washington, DC 20016<br>Email: brendant@cuneolaw.com<br>          charlesl@cuneolaw.com |
| Caleb L. Marker<br>**Zimmerman Reed LLP**<br>6420 Wilshire Blvd., Suite 1080<br>Los Angeles, CA 90048<br>Email: caleb.marker@zimmreed.com | Michael J. Flannery<br>**Cuneo Gilbert & Laduca LLP**<br>Two Cityplace Drive, 2nd Floor<br>Saint Louis, MO 63141<br>Email: mflannery@cuneolaw.com |
| Robert K. Shelquist<br>**Cuneo Gilert & LaDuca, LLP**<br>5775 Wayzata Blvd., Suite 620<br>St. Louis Park, MN 55416<br>Email: rkshelquist@cuneolaw.com | Thomas G. Hoffman, Jr.<br>**Labaton Keller Sucharow LLP**<br>140 Broadway<br>New York, NY 10005<br>Email: thoffman@labaton.com |
| Manish Borde<br>**Borfde Law PLLC**<br>1700 7th Avenue, Suite 2100<br>Seattle, WA 98101<br>Email: mborde@bordelaw.com | |

Dated: August 18, 2025.          FENWICK & WEST LLP


                                 By: *s/ Brian D. Buckley*
                                     Brian D. Buckley (WSBA No. 26423)

                                     Counsel for Defendants-Petitioners
                                     AMAZON.COM, INC. and
                                     AMAZON.COM SERVICES, LLC

16